UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILSON OIL INC.,

                Plaintiff,

     v.

IRELY LLC ,

                Defendant.

CASE NO. 3:25-cv-05698-BHS

ORDER

This matter is before the Court on defendant iRely LLC's motion to compel arbitration, Dkt. 13.

This is a business dispute. In 2021, Plaintiff Wilson Oil Inc. engaged iRely to build a custom enterprise resource planning (ERP) software system. Dkt. 1 at 4. In February 2022, iRely sent Wilson a project proposal. Dkt. 13-1 at 14. The document referenced and incorporated a "Master Agreement" apparently hosted on an iRely server:

> This Proposal, together with the terms and conditions set forth in the Master Agreement and related Schedules, together constitute the Agreement. http://inet.irelyserver.com/display/CD/iRely+Master+Agreement . . .

***

ORDER - 1

[B]y accepting this Proposal you . . . are agreeing to the terms and conditions set forth in the Master Agreement and related Schedules, each of which is incorporated herein (together, the 'Agreement').

*** 

By entering into this Agreement you acknowledge and agree you have received and reviewed the Master Agreement and related Schedules. If you are entering into the Agreement on behalf of a company or other legal entity, you represent that you have the authority to bind such entity to the Agreement.

*Id.* Wilson's chief financial officer Don Bloodworth and iRely's Company Officer Chris Pelz both signed the document. *Id.*

In December 2024, Wilson's Director of Business Process Improvement Stacy Scott and Pelz signed a Development Statement of Work that referenced the Master Agreement. *Id.* at 39–40, 42. Scott, responsible for Wilson's ERP program, later observed that iRely was not abiding by the planned project timeline. Dkt. 15 at 2.

In August 2025, Wilson sued iRely for breach of contract and, in the alternative, unjust enrichment. It invoked this Court's diversity jurisdiction. Dkt. 1.

iRely moves to compel arbitration for all claims or, in the alternative, dismiss the unjust enrichment claim. Dkt. 13. It alleges Wilson must arbitrate because the Master Agreement included an arbitration clause. *Id.* at 6. In support, it provides a June 2020 "Provider Master Agreement" that requires "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration" in Allen County, Indiana. Dkt. 13-1, Ex. B at 16, 26.

Wilson responds that iRely fails to establish that Wilson agreed to arbitrate its claims. Dkt. 14. It argues there is no evidence that Bloodworth or any other Wilson

ORDER - 2

representative reviewed or assented to the Master Agreement and contends the hyperlink in the project proposal has never worked. *Id.* at 7. It asks the Court to either deny iRely's motion to compel or order discovery into arbitrability followed by an evidentiary hearing. *Id.* at 5.

## I.    DISCUSSION

The Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are on an "equal footing with other contracts," and therefore, a court must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citation modified). Before compelling arbitration, a court must determine two gateway issues: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

**A.     Wilson agreed to arbitration by signing the ERP project contract.**

When the making of an arbitration agreement is disputed, as is the case here, courts apply the summary judgment standard. *Hansen v. LMB Mortgage Servs.*, Inc., 1 F.4th 667, 670 (9th Cir. 2021); *see* Fed. R. Civ. Pro. 56. A court may compel arbitration

only if, viewing the evidence in the light most favorable to the party opposing arbitration, no genuine dispute of material fact exists regarding the agreement's formation. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980)). If, however, there is a genuine factual dispute regarding whether the parties formed an agreement, "the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. "The district court may decide the case in a bench trial if the party opposing arbitration does not demand a jury trial." *Id*. at 670 (quoting 9 U.S.C. § 4).

The Court determines as a matter of law that Wilson agreed to arbitration. Although Wilson argues it never accessed or reviewed the Master Agreement when it signed the ERP project proposal, iRely's evidence proves otherwise. iRely offers a June 2020 document as evidence of the Master Agreement containing the arbitration clause. Dkt. 13-1, Ex. B. Chris Tate, iRely's Chief Financial Officer, asserts this is the version of the Master Agreement that "iRely customers would have viewed" when they "clicked on [the] hyperlink in February 2022." *Id.* at 2, Ex. B, C. Bloodworth, in his capacity as Wilson's Chief Financial Officer, signed the project proposal in February 2022. *Id.*, Ex. A at 8, 14. In doing so, he expressly agreed to "have received and reviewed the Master Agreement and related Schedules." *Id.* at 8.

Scott asserts that when she and other Wilson representatives "attempted to access the 'Master Agreement' through the hyperlink referenced in the Project Agreement, the hyperlink did not work," but she does not provide any time reference for that claim. Dkt. 15 at 2. Tate acknowledges the link no longer functions but provides a persuasive explanation: "sometime after February 2022, iRely started using [another] cloud-based service for hosting," causing "the URLs of documents hosted on iRely's website to change." Dkt. 13-1 at 2. Wilson fails to establish the link did not work when Bloodworth signed the ERP proposal in February 2022.

Finally, Wilson challenges iRely's list of user logins because "none of those employees had apparent authority to bind Wilson itself." Dkt. 14 at 14. This argument too is unavailing. Tate explains that "[a]fter an iRely customer signed a Project Proposal," they had access to its software via a login page. Dkt. 13-1 at 3. A link to the Master Agreement appeared on the login page. *Id.* The fact that Bloodworth's name, or any other Wilson officer's name, does not appear on that list only proves that they did not access the login page *after* the ERP project contract was signed. Moreover, Wilson does not dispute Bloodworth's authority to bind Wilson to the project, and iRely persuasively highlights that Wilson's claims depend on that very contract.

Even viewing the facts most favorably to Wilson, iRely has established that Wilson had access to, and therefore agreed to, the Master Agreement when Bloodworth signed the ERP project proposal. Wilson was undisputably on notice about the Master Agreement, and that those terms were incorporated into the ERP project proposal. *See In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019) (recognizing enforceability of terms of

ORDER - 5

service that "clearly incorporated [a] document containing the arbitration clause in question"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."). iRely has proven by a preponderance of evidence that Wilson agreed to the arbitration term contained in the Master Agreement.

**B.      The arbitration agreement encompasses Wilson's claims against iRely.**

Next, the Court must determine whether the arbitration agreement encompasses the dispute at issue here. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

Wilson's claims arise out of iRely's alleged mishandling of the ERP project. Dkt. 1. The ERP project contract expressly incorporated the arbitration clause in the Master Agreement, which provides, "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration" in Allen County, Indiana. Dkt. 13-1, Ex. B at 26. The Court determines the arbitration agreement covers the parties' ERP project dispute.

Furthermore, to the extent Wilson disputes the arbitrability of its claims, that is an issue for the arbitrator. The arbitration clause incorporates the Commercial Arbitration Rules of the American Arbitration Association, which delegate issues regarding the scope of an arbitration agreement to the arbitrator. *See* Dkt. 13 at 18, Dkt. 13-1 at 26.

iRely's motion to compel arbitration is **GRANTED**. The Court therefore does not reach iRely's motion to dismiss Wilson's unjust enrichment claim; that issue is for the arbitrator.

The parties are directed to engage in arbitration in Allen County, Indiana per the terms of the Master Agreement.

This case is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

Dated this 10th day of July, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 7